**STATE of Minnesota, Respondent,**

v.

**Randy Lee HAGLUND, Appellant.**

**No. 47765.**

Supreme Court of Minnesota.

June 16, 1978.

C. Paul Jones, Public Defender, Kathleen Kelly, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., St. Paul, David Olin, County Atty., Thief River Falls, for respondent.

PETERSON, Justice.

Defendant was found guilty by a district court jury of a charge of aggravated robbery, Minn.St. 609.245, and was sentenced by the trial court to a maximum indetermi-nate term of 20 years in prison. On this appeal from judgment of conviction, defendant contends that (1) there was legally insufficient corroboration of the accomplice testimony identifying him as a participant in the crime, and (2) he was prejudiced by the testimonial summary of an intercepted inculpatory note he wrote which included the statement that he did not want to be "sent to St. Cloud again." We affirm.

At about 1:00 a. m. on December 13, 1976, a lone gunman robbed a motel in Thief River Falls of about $370. Police pursued the fleeing car at high speeds for about 2 miles on a rural road before the gunman and an accomplice abandoned the car, which had been stolen. The police captured the gunman, Roger Walker, but the accomplice escaped on foot.

From talking with Walker's brother at his house, the police learned that Walker had been with defendant and others at a certain address earlier in the evening. Accordingly, a surveillance of this house was set up. At about 4:30 a. m. defendant, his clothes wet and snow covered, returned and was arrested.

Later that morning police traced the tracks of the accomplice from the scene of the abandoned car to a point about 8 blocks from defendant's house, where the tracks were lost. The tracks were about the same size as one would expect tracks made by defendant's boots to be and had the same tread pattern.

On December 22, 1976, a search of defendant's jail cell resulted in the discovery and seizure of an inculpatory note addressed to defendant's brother, telling him how to find the money and asking him to provide an alibi. After confronting defendant with the note, the officers, accompanied by defendant, went to the area where the car had been abandoned and again looked for the money, which as yet had not been found. When the officers returned to the car after looking unsuccessfully for about an hour, defendant told them he had eaten the note, which one of the officers had left in his jacket in the car.

The key witness at defendant's trial was Roger Walker, the admitted gunman, who testified that defendant knowingly participated in the robbery as driver of the getaway car.

Walker's brother, Bruce, who was not involved in the robbery, testified that defendant tried to persuade him to rob the same motel 1 day earlier.

Other witnesses testified concerning the tracks and the condition of defendant when he returned to his house at 4:30 a. m.

Defendant's key point of contention on appeal relates to the testimony about the contents of the note which defendant ate. Two witnesses, the sheriff and the police chief, testified about the note's contents. The reference to the statement about not wanting to be sent to St. Cloud "again" was made when the police chief summarized the note's contents:

"Q. And what did this note say?

"A. The letter was addressed to Dave and it asked Dave to come into Court and testify in his behalf and establish an alibi for Randy, saying that he was with him all night and he wasn't involved in anything. He said that he didn't believe that Roger Walker's testimony alone could convict him. He pleaded with him to come in. It said that if he didn't come in, I'll get sent to St. Cloud again. He went on to say that, would you like to make a quick $50? If you do, I will tell you where some money is at, go pick it up and I will give you $50 of it. With that he described the location west and south of Thief River Falls by words. At the end of the wording he said, this sounds confusing so I have written out a map so you can see better where the money is located.

"Q. And was this note signed?

"A. Yes, it was.

"Q. By whom?

"A. It was signed 'Randy'."

Immediately after the police chief completed his testimony, the defense counsel objected in chambers to the reference to being sent to St. Cloud "again," saying that it indirectly referred to defendant's criminal record. He stated that he did not want a mistrial or any curative instructions but wanted to reserve the right to move for a mistrial if the jury returned a guilty verdict. The prosecutor responded that he was sure the officer did not intend to suggest to the jury that defendant had a criminal record but was just summarizing the note as he remembered it. The court and counsel then got in a discussion whether, if the note had not been destroyed, the court would have had to delete the word "again" before admitting it. This issue was not resolved one way or the other because, as the court pointed out, there was not any motion before him at the time to rule on.

The state and the defense then rested and the case was submitted to the jury. The jury found defendant guilty as charged.

In denying a motion for a new trial on this ground, the trial court stated that he believed the prosecutor did not intentionally elicit the indirect reference to defendant's prior imprisonment at St. Cloud and that the evidence of guilt was so overwhelming that he was convinced the reference had not prejudiced defendant.

■ There is absolutely no merit to defendant's contention that there was insufficient corroboration of the accomplice testimony. The difficult issue is the issue of the possible prejudice of the testimony indirectly referring to defendant's prior imprisonment.

■ The prosecutor argues on appeal that if the note had not been destroyed, it could have been admitted into evidence without excising the word "again" and that therefore defendant cannot complain about the testimonial reference to the statement. We do not agree with this approach. As stated in *United States v. Wiggins,* 166 U.S.App.D.C. 121, 129, 509 F.2d 454, 462 (1975), "the law is plain that evidence of other offenses committed by a defendant is not automatically made admissible because the defendant referred to those offenses in a confession." Generally, the defendant's

references in a confession to prior crimes or to his prior imprisonment should be excised unless there is some good reason for not doing so, as when the evidence is admissible under one of the exceptions to the exclusionary rule or when the confession is unintelligible if the reference to the other offense is omitted.

In this case, then, we start with the proposition that the evidence in question was inadmissible. That being so, it matters whether the prosecutor knew in advance that there was anything in the statement which might suggest to the jury that defendant had a criminal record. We have indicated that if the prosecutor intentionally elicits other-crime evidence knowing that it is inadmissible, we will reverse more readily. *State v. Richmond,* 298 Minn. 561, 214 N.W.2d 694 (1974). However, even when the elicitation is unintentional, we will reverse if the evidence is prejudicial. Id.

In this case we must assume that the prosecutor did not intentionally elicit inadmissible evidence because there is no evidence in the record to suggest that the prosecutor had any reason to anticipate the use of the word "again." As we indicated in *State v. Holbrook,* 305 Minn. 554, 233 N.W.2d 892 (1975), we cannot assume that an elicitation of this sort was intentional when there is nothing on the record to support such an assumption, especially where the trial court stated that it had no reason to believe it was intentional.

The question then is whether a reversal is necessary even though the evidence was apparently inadvertently elicited. We believe that the circumstances of this case are such that a reversal is not necessary.

First of all, the reference was of a passing nature and the import of the inclusion of the word "again" may have been missed by defendant. In fact, the reason given by defense counsel for not requesting a curative instruction was that he did not want to emphasize the matter. We do not think defense counsel's decision not to request a curative instruction should be held against defendant because such an instruction might have emphasized this portion of the statement. However, that such an instruction might have emphasized this portion of the statement results from the fact that the statement was of a passing nature, the import of which might have been missed by the jury. The key things that stand out from the testimony of the sheriff and the chief of police are, not that defendant may have been in prison before, but that he knew or thought he knew where the money was, that he was trying to get his brother to provide an alibi, and that he ate the note.

Our second main reason for not reversing is that the evidence in this case was overwhelming. Not only was there positive testimony by an admitted gunman that defendant participated in the execution of the crime but there was very strong corroborating evidence, including the testimony of Bruce Walker about defendant wanting to rob the motel 1 day earlier, the testimony about following the foot tracks to a point 8 blocks from defendant's house, the testimony about the size and pattern of the tracks, the testimony about defendant's coming home at 4:30 a. m. all wet and frozen, the testimony about the other things mentioned in the note, and the testimony about defendant's having eaten the note.

Errors of this kind unfortunately do make their way into criminal cases but not all such errors require reversal. Reversal is mandated in a case like this only when the error is prejudicial. Here it seems extremely unlikely that the evidence in question played a significant role in persuading the jury to convict. We therefore affirm.

Affirmed.