**STATE of Minnesota, Respondent,**

v.

**Steven Arthur HJERSTROM, Appellant.**

**No. 49260.**

Supreme Court of Minnesota.

Dec. 14, 1979.

**626**

C. Paul Jones, Public Defender, and Kathy A. King, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., Vernon E. Bergstrom, Chief Asst. County Atty., Appellate Division, David W. Larson, Thomas A. Weist and Janeen Rosas, Asst. County Attys., Minneapolis, for respondent.

ROGOSHESKE, Justice.

Defendant was found guilty by a district court jury of charges of burglary, Minn. Stat. § 609.58, subd. 2(3) (1976), and theft of property valued at more than $100, § 609.-52, subds. 2(1) and 3(2), and was sentenced by the trial court to concurrent terms of 5 years in prison. On this direct appeal defendant contends that he should be given a new trial because the trial court committed prejudicial error in admitting, over objection, (1) testimony by the police concerning self-contradictory statements defendant made in a general exculpatory statement he gave when arrested, where the contradictory statements reveal that he had first met his separately tried codefendant in prison, and (2) testimony by a different police officer that he later had tried to get a complete statement from defendant at the stationhouse but had been unable to, testimony which the state elicited for the purpose of rebutting the implication created by defense counsel's cross-examination of another officer that defendant had not had a chance to tell his full version of the events. We conclude that the trial court erred in admitting the testimony of the arresting officer concerning defendant's prior imprisonment but that the error was nonprejudicial and, accordingly, we affirm.

On the evening of December 30, 1977, a burglary at the Royal Business Machine Company in St. Louis Park was interrupted when Dale Christensen, who had done business with the company and was driving by, drove closer in order to investigate the reason for lights being on which normally should not have been on at that time. While turning his car around his car's headlights shined on one of the burglars, who was dressed in a black jacket and was standing in the window. Christensen and his wife drove to a nearby motel to report the burglary, and police responded in minutes, discovering that the service area had been broken into and a number of items either taken or abandoned while in the process of being taken. Among these items were a number of calculators. Defendant and his separately tried codefendant, Bruce Anderson, were arrested at a bus stop a block away from the building, after a police officer who was investigating them observed one of these calculators on the ground behind the bus stop bench and after Christensen and his wife arrived and said that Anderson, who was wearing a black jacket, looked like the burglar they had momentarily seen standing by the window. Defendant also had in his possession a calculator not taken in the burglary. Defendant explained that he and Anderson had been offered a ride to a party but had gotten stranded and were waiting for a bus ride back to Minneapolis. However, expert witnesses would later determine (a) that defendant's left shoe "probably" caused a print found at the scene and that other shoe prints found were consistent with having been made by defendant's and Anderson's shoes, and (b) that some chips of glass found in Anderson's jacket and gloves and in defendant's clothes and his shoes had the same dispersion and refraction index as glass in the window which was broken by the burglars in gaining entrance, and that only 5% of all glass in the United States had this particular dispersion and refraction index. It was also determined that Anderson had been employed in the service department of the burgled company in 1974.

■ 1. The first and more difficult issue we address is defendant's contention that the trial court committed prejudicial error in permitting the prosecutor to elicit testimony that during his postarrest interrogation by police at the scene defendant admitted, in response to a question how he met Anderson, that he had met him in Stillwater Prison. This testimony was admitted, over defense objection, on the theory that the statement contradicted an earlier statement, also in response to a police question, by which defendant denied knowing whether Anderson had ever been arrested or was on probation or parole.

We start with the proposition that merely because a defendant waives his right and agrees to talk with the police does not mean that everything that is asked by the officers or said by the defendant in response is necessarily admissible. The only tenable rule is that, assuming a proper objection, immaterial and irrelevant portions of an extrajudicial interrogation of a defendant should generally not be received in evidence.

The leading Minnesota case illustrating this rule is *State v. Haglund,* 267 N.W.2d 503 (Minn.1978), in which the defendant on appeal claimed that he was prejudiced by the testimonial summary of an intercepted inculpatory note he wrote which included the statement that he did not want to be "sent to St. Cloud again." Responding to this argument, the prosecutor argued that if the note had not been destroyed, it could have been admitted into evidence without excising the word "again" and that therefore the defendant could not complain about the testimonial reference to the statement. Rejecting this reasoning we stated as follows:

We do not agree with this approach. As stated in *United States v. Wiggins,* 166 U.S.App.D.C. 121, 129, 509 F.2d 454, 462 (1975), "the law is plain that evidence of other offenses committed by a defendant is not automatically made admissible because the defendant referred to those offenses in a confession." Generally, the defendant's references in a confession to prior crimes or to his prior imprisonment should be excised unless there is some good reason for not doing so, as when the evidence is admissible under one of the exceptions to the exclusionary rule or when the confession is unintelligible if the reference to the other offense is omitted.

267 N.W.2d at 505. Ruling that the reference to going to St. Cloud "again" was erroneously, although unintentionally, elicited by the prosecutor, we nonetheless declined to reverse because the reference was of a passing nature and the evidence of defendant's guilt was overwhelming, making it "extremely unlikely that the evidence in question played a significant role in persuading the jury to convict." 267 N.W.2d at 506.

Here it is clear that if the arresting officer had simply asked defendant if he knew that Anderson had ever been arrested or been on probation or parole, that question and defendant's response would not have been admissible over defendant's objection. This is because whether or not Anderson had ever been arrested or on probation or parole was, without more, irrelevant or immaterial to the question of defendant's guilt or innocence. For the same reason, it is clear that if the arresting officer had simply elicited from defendant a statement that he and Anderson had met in prison, that statement would not have been admissible over defendant's objection.

The state's theory at trial apparently was that because the two different statements by defendant were inconsistent with each other and yet were made during the same period of questioning by the arresting officer, the effect was to impeach the credibility of the contemporaneous general exculpatory statement defendant made.

What the court permitted the state to do in effect was to impeach one immaterial statement in a confession with another immaterial statement in a confession. In situations such as this the appropriate approach is to apply the balancing test of Minn.R. Evid. 403, which provides as follows:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

On the one hand, it is true that defendant's statement that he had met Anderson in prison contradicted his prior statement that he did not know whether Anderson had ever been arrested or on probation or parole, and it is therefore probably more likely that defendant was lying in his general exculpatory statement. However, on the other hand, the evidence that defendant and Anderson were ex-felons who had served time in prison together was the kind of evidence which had great potential for unfair prejudice. Applying the balancing approach, we conclude that the trial court erred in admitting the evidence in question.

Because of the seriousness of the error, if there were any reasonable doubt as to whether the result would have been different if this evidence had not been admitted, we would order a new trial. However, the evidence of defendant's guilt was overwhelming. He was literally caught in the act. Under the circumstances, we conclude that it was extremely unlikely that the evidence prompted the jury to convict where it otherwise would not have.

■ 2. The only other issue relates to the admission, over defendant's objection, of testimony that the police tried to question defendant again at the police station in order to get a complete statement as to what he had been doing that night but they were unable to do this. The prosecutor sought and obtained permission to elicit this testimony only after defense counsel, in cross-examining the arresting officer, asked a series of questions for the purpose of showing that the arresting officer had not questioned the defendant in any detail about what he had been doing. While the prosecutor elicited the testimony about the unsuccessful attempt to get a complete story in an effort to refute the impression that the police had not shown any real interest

in getting defendant's version of the events, the prosecutor did not elicit any specific testimony about defendant's having refused to talk. This came out on cross-examination and on recross-examination when the defense counsel elicited, by leading questions, that defendant had been given a *Miranda* warning, had asked to talk with his attorney, and had not provided any information to the officer.

While it is true that the United States Supreme Court, in *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), held that a prosecutor's use of a defendant's postarrest silence to impeach his exculpatory testimony at trial violated due process, the court also stated in a footnote that the fact of postarrest silence can be used to challenge a defendant's testimony as to his behavior following arrest, as where a defendant testifies to an exculpatory version of events and claims to have told the police the same version on arrest. Here defense counsel tried to create the impression on cross-examination of the arresting officer that the police were not interested in letting defendant give his full and complete version of what had happened on the evening in question, so it was proper for the state to rebut this by showing that the police had tried but were unable to obtain a complete statement from defendant.

Affirmed.