**STATE of Minnesota, Respondent,**

v.

**Ronald Wayne FARR,
Petitioner, Appellant.**

**No. C1–84–1232.**

Court of Appeals of Minnesota.

Nov. 6, 1984.

Hubert H. Humphrey, III, Atty. Gen., Thomas L. Johnson, Hennepin County Atty., Vernon E. Bergstrom, Chief, Appellate Section, Rick Osborne, Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Susan K. Maki, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and HUSPENI and FORSBERG, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

Appellant Ronald Farr was convicted of criminal sexual conduct in the first degree in violation of Minn.Stat. § 609.342(e)(i) (1982), after forcing a young woman to engage in oral sex with him. On appeal he raises several issues which are claimed to warrant reversal, a new trial, or a modification of his sentence. We reject all of appellant's assertions and affirm.

## FACTS

The complainant in this case is a 20-year old woman. Around 12:00 A.M. on February 4, 1983, she was driving home when she noticed a large white Bronco vehicle, with a wide maroon-colored stripe on its side, unusually large tires, and a raised suspension. She believed that vehicle was following her. The Bronco went past her, and she therefore thought it was safe to enter the parking lot to her apartment complex.

As the complainant got out of her car, she noticed a man dodging the cars, running towards her. He wore a nylon stocking over his head as a mask. As she tried to get back into her car, the man wedged the door open and pushed her onto the passenger seat as he entered her car. She gave him her purse, but the man replied, "I'll take that and more." She described him wearing a tan jacket and rough "whitish" gloves. She pleaded with him not to hurt her, but he pulled his pants down, grabbed her by the hair, pulled her head down to his penis and said, "Shut up, just give me head." The man forced her to suck his penis, and then ordered her to take off her clothes. She stalled, noticed headlights of an approaching car, and bolted out the passenger door screaming for help.

Complainant was given assistance by the driver of the oncoming car, Ray Bolstad. As the two drove through the parking lot, complainant saw the same Bronco vehicle which had followed her. She saw a shadowy figure duck down inside the Bronco, which then drove off.

David Boult was also in the parking lot at the time of this incident. He saw a man with a tan jacket, walking hunched over, approaching the parked Bronco. He heard complainant screaming for help, and saw the man get into the Bronco. He noticed the first three letters of the license plate were "LRS," and that the Bronco had a chrome trailer hitch and fog lights, a lift kit, tall tires and slotted aluminum mag wheels.

Later that night Boult identified a Bronco parked in a bar as the one he had seen in the parking lot of the apartment complex. Farr was arrested as he went to get into this Bronco, which bore license number "LRS 659." He was wearing a tan jacket and a pair of rough gloves. A subsequent search of the Bronco, pursuant to a warrant, resulted in a discovery of a nylon stocking under the carpeting of the passenger area behind the driver's seat.

Subsequent to Farr's arrest, he was placed in a six-man lineup and was identified by complainant as her attacker.

## ISSUES

1. Was a pretrial lineup impermissibly suggestive?

2. Was the evidence sufficient to convict appellant?

3. Did the trial court err in not granting a mistrial following a remark from a State's witness?

4. Did the trial court err in failing to give appellant's requested instruction on circumstantial evidence?

5. Was appellant denied his right to be present and to assistance of counsel by the trial court's communications with the jury after deliberations?

6. Did the post-conviction court err in refusing to depart from the guidelines?

## ANALYSIS

### I.

Farr claims the pretrial lineup was impermissibly suggestive and created a substantial likelihood of irreparable misidentification. *Simmons v. United States*, 390 U.S. 377, 383–84, 88 S.Ct. 967, 970–71, 19 L.Ed.2d 1247 (1968); *State v. Darveaux*, 318 N.W.2d 44 (Minn.1982). Farr's contentions are without merit. Lineups need not use exact clones of an accused. The six men used in the lineup were remarkably similar in appearance and were close to the description complainant gave police. Farr was placed in the middle of the lineup as he requested, an attorney from the public defender's office was present, and complainant was not shown any photos of the lineup participants before viewing them. Thus the procedure used here was also fair.

Likewise, we reject the contention that complainant's in-court identification was the product of the impermissibly suggestive lineup.

### II.

Farr contends the evidence was insufficient to sustain his conviction. This argument is meritless. The record is re-

plete with evidence, both direct and circumstantial, showing Farr was the man who sexually assaulted complainant.

## III.

In response to a question by the prosecutor about the instructions which were given about the lineup, Brooklyn Center Investigator Robert Dirks replied:

> They were informed that all of them should act in a natural manner so as not to attract attention to any one specifically.
>
> They were told that they would be asked to walk to each window—since there was a witness also from a Brooklyn Park case—stand facing the window and state the statement, "Shut up, give me head," turn and give a profile and then proceed back to their position.

Farr's attorney moved for a mistrial based on these remarks because they implied there was another case in which Farr was a suspect. He did not ask for a curative instruction. The trial court denied the motion, noting it would make no statement to the jury because it would improperly underscore the matter. Farr claims the trial court erred in denying the mistrial motion.

■ Although the investigator's remark was an innocent, inadvertent statement made in passing, it was, however, evidence that Farr may have been suspected of committing another crime, and, as such, was inadmissible. *State v. Sweeney*, 180 Minn. 450, 231 N.W. 225 (1930). Our concern is whether a reversal is necessary because of its prejudicial effect. *State v. Haglund*, 267 N.W.2d 503 (Minn.1978). In *Haglund*, the court considered a similar inadvertent

statement by a prosecution witness. The court found a reversal unnecessary because the remark was of a passing nature, the impact of which might have been missed by the jury, and because the other evidence was overwhelming. Both factors are present here. Farr's counsel had already told the jury that a number of other rapes were unsolved, and it would be expected that other witnesses would be present. It is extremely unlikely that this reference played a significant role in the jury's decision to convict.

## IV.

■ Farr claims the trial court erred in not giving the patterned instruction on circumstantial evidence.[1] This claim is without merit. The trial court denied Farr's request to give CRIMJIG 3.05, para. 4, because there was sufficient direct evidence of guilt. *See State v. Williams*, 337 N.W.2d 387 (Minn.1980). The court did offer to read the first three paragraphs of 3.05. Farr's counsel objected, stating he preferred that no instruction be given if the last paragraph was omitted. Ultimately, no instruction on direct and circumstantial evidence was given. Farr's claim now that the trial court erred in not instructing the jury at all on circumstantial evidence is disingenuous. Given Farr's express request not to give the instructions, he clearly has forfeited the right to raise this issue.

## V.

Farr claims he was denied his right to be present and his right to assistance of counsel by the trial court's communications with the jury after deliberations had begun.

---

1. The requested instruction, Crim.J.I.G. 3.05, reads:

   A fact may be proved by either direct or circumstantial evidence, or by both. The law does not prefer one form of evidence over the other.

   Direct evidence is the testimony of a person who perceived the fact through his senses, and testifies to it, or physical evidence of the fact itself.

   Circumstantial evidence is indirect proof by proving one fact from which an inference of the existence of another fact may reasonably be drawn.

   Circumstantial evidence may be of the highest and most conclusive kind of proof, but in order to reach a conclusion beyond a reasonable doubt on circumstantial evidence alone, all circumstances proved must be consistent with that conclusion and inconsistent with any other rational conclusion.

1. The jury returned with two written questions to the trial court regarding the possible testing of the nylon stocking for saliva. The trial court contacted defense counsel, and defense counsel, without contacting Farr, told the trial court there was no need for him to be present. The trial court then returned the jury to open court and told the jury "the Court is not permitted to comment on anything. What you have to base your decisions on is the evidence that was presented while everyone was here."

2. The jury then asked whether the police reports containing statements from witnesses were evidence. Without recontacting defense counsel, the trial court told the jury in open court that it would have to rely on its own recollection unless it wished to have a particular portion of the testimony reread, in which case the attorneys and the appellant would be brought in. The court did reread its original instructions on presumption of innocence, burden of proof, and reasonable doubt in response to a request by the jury about reasonable doubt.

3. Later, the jury returned with a request to reread complainant's initial testimony and her statement to the police, as well as David Boult's entire testimony. Without notifying defense counsel, the trial court denied the jury's request on the ground of time and practical problems.

This issue is a troubling one. Defense counsel and prosecutor should always be notified whenever the jury returns with a question or a request to review testimony or other evidence. Minn.R.Crim.P. 26.03, subd. 19(2). The trial court did contact defense attorney when the first jury questions were received. Defense counsel certainly should have contacted his client at that time. He did not. Instead, he waived Farr's presence without consulting him.

The trial court received two subsequent communications from the jury. Perhaps based upon the earlier representations of defense counsel, the trial court did not contact defense counsel. This was error. The trial court should have assured proper, continuing contact with counsel. Defense counsel, of course, would then have had a corresponding continuing duty to keep in contact with Farr.

Despite the failure of both defense counsel and trial court to properly discharge their duties, a careful review of the substance of the trial court's communication with the jury leaves us unpersuaded that Farr has shown the requisite prejudice needed to obtain a new trial or reversal on this ground. *State v. Kindem*, 338 N.W.2d 9 (1983); *State v. Richardson*, 332 N.W.2d 912 (Minn.1983); *State v. Shiue*, 326 N.W.2d 648 (Minn.1982). The trial court here refused to comment on the jury's first question, reread a portion of its earlier instructions on presumption of innocence, burden of proof, and reasonable doubt, and exercised its discretion in not rereading large portions of the testimony. *See State v. Daniels*, 332 N.W.2d 172, 177 (Minn. 1983). Under the particular circumstances of this case, Farr was not substantially prejudiced by his counsel's or his own absence when the trial court responded as it did to the jury's questions.

## VI.

Pursuant to an order of this court, Farr brought a petition for post-conviction relief requesting a dispositional or a durational departure. He had been sentenced to the presumptive term of 43 months imprisonment. The basis for his request was that, while he was incarcerated in prison, he assisted in the investigation and prosecution of two other inmates in regard to burglary and theft offenses committed in Blue Earth County. Another basis was that he claimed he was particularly amenable to treatment in the community. Farr strongly argues that, although he was not promised anything for his cooperation in regard to the Blue Earth County matters, it is unfair to subject him to harassment by other inmates for his cooperation.

While we are sympathetic to Farr's fears for his physical safety, we agree with the trial court that "an individual who elects to be an informer is in a dangerous

position in any institution but that is a matter for consideration by the correction authority, and the facilities obviously exist to transfer [appellant] to another state where his background would not be known to the population."

Farr has not shown any abuse of discretion by the trial court in refusing to depart dispositionally. *See State v. Kindem*, 313 N.W.2d 6 (Minn.1981); *State v. Sherwood*, 341 N.W.2d 574 (Minn.Ct.App. 1983). Further, there is nothing in the record which would justify a durational departure. Certainly there was no abuse of discretion in refusing to depart downward durationally.

### DECISION

Affirmed.