(No. 64142.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. LUIS RUIZ, Appellant.

*Opinion filed October 25, 1989.—Rehearing denied December 4, 1989.*

2

4

Charles M. Schiedel, Deputy Defender, and Theodore A. Gottfried, State Appellate Defender, of the Office of

the State Appellate Defender, of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Inge Fryklund and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MILLER delivered the opinion of the court:

The defendant, Luis Ruiz, appeals from an order of the circuit court of Cook County dismissing, without an evidentiary hearing, his petitions for post-conviction relief. Because the defendant was sentenced to death for the underlying murder convictions, the present appeal lies directly to this court. 107 Ill. 2d R. 651(a).

The defendant's convictions stem from his participation in the murders of three youths, Michael Salcido, Arthur Salcido, and Frank Mussa. The victims' bodies were discovered in a car early in the morning on February 25, 1979. According to the evidence presented at the defendant's trial, the victims encountered the defendant and three other men late in the evening on February 24, 1979, at a restaurant in Chicago. The defendant and his companions were members of the Latin Kings street gang, but the victims were not aware of that at the time. Michael Salcido asked the defendant for help in obtaining marijuana. After a brief conversation, Michael told the defendant's group that at times he assisted a rival gang, the Latin Eagles, and that he had been present during the Eagles' murder of two Latin Queens, who are female companions of the Latin Kings. The defendant responded that he was also a Latin Eagle and told Michael that he would help him find some marijuana. The group then left the restaurant in the victims' car, and the Latin Kings directed the victims to drive to

an alley. There, they escorted Michael Salcido some distance from the car and beat him. They then returned with Michael to the car and drove to another alley, where the victims were stabbed to death by the defendant's three companions. On March 2, 1979, less than a week after the murders, the defendant told a friend about the offenses. The defendant was arrested on March 3, and he made a confession to authorities. Both statements were introduced into evidence at the defendant's trial, along with evidence that the defendant's fingerprint was found on the victims' car.

A jury found the defendant guilty on charges of murder, unlawful restraint, and armed violence with respect to each of the three victims. In a separate bench proceeding, the defendant, who was 19 years old at the time of his commission of the offenses, was found eligible for the death penalty on the basis of the multiple-murder aggravating circumstance (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 9—1(b)(3)); the judge rejected the defendant's argument that the death sentence was not an available disposition for one convicted on an accountability theory. At the sentencing hearing the State presented evidence of the defendant's commission of a homicide in 1976, for which the defendant was not tried, and of his guilty plea to a charge of burglary in 1977. The judge sentenced the defendant to death for the murder convictions.

The defendant's convictions and death sentence were affirmed on direct appeal (*People v. Ruiz* (1982), 94 Ill. 2d 245), and the United States Supreme Court denied review (*Ruiz v. Illinois* (1983), 462 U.S. 1112, 77 L. Ed. 2d 1341, 103 S. Ct. 2465). The defendant then instituted the present action under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1983, ch. 38, pars. 122—1 through 122—7), filing *pro se* a petition for post-conviction relief on September 30, 1983. The State moved to dismiss the petition. Through appointed counsel, the defendant later

filed a supplemental petition and an amendment to the supplemental petition. The main allegations raised by the defendant's post-conviction petitions concerned the competency of the different attorneys who had represented the defendant at trial and on direct appeal.

The action was originally assigned to the same circuit judge who had presided at the defendant's trial and sentencing hearing. The judge denied the defendant's request for reassignment of the case and dismissed the post-conviction petitions without conducting an evidentiary hearing. The defendant appealed, contending, among other things, that the matter should have been assigned to a different judge, as was then required by section 122—8 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 122—8), which took effect shortly after the defendant filed his initial, *pro se* post-conviction petition. We agreed with the defendant that the new provision was applicable to his action, expressly reserving for a future case a determination of the statute's constitutionality (see *People v. Joseph* (1986), 113 Ill. 2d 36 (invalidating section 122—8 as a violation of the separation of powers provision of the Illinois Constitution)). We therefore vacated the circuit court order dismissing the defendant's post-conviction petitions and remanded the cause for further proceedings before a different judge. *People v. Ruiz* (1985), 107 Ill. 2d 19.

The matter then returned to the circuit court, and the case was assigned to a different judge, in accordance with our mandate. Following the remand, defense counsel submitted a group of affidavits in support of the post-conviction petitions and renewed his request for an evidentiary hearing; counsel did not make any further amendments to the petitions. The State rested on the dismissal motion that had been previously filed in response to the defendant's original, *pro se* petition. At

the conclusion of the hearing on the State's motion to dismiss, the circuit judge dismissed the defendant's post-conviction petitions without allowing an evidentiary hearing.

In the present appeal the defendant asks that his request for post-conviction relief be allowed and that he be granted a new trial and sentencing hearing. In the alternative, the defendant asks that the cause be remanded for an evidentiary hearing on the matters raised in the post-conviction petitions.

An action for post-conviction relief represents a collateral attack on a prior judgment; it is not an appeal from the underlying conviction and sentence. (*People v. Free* (1988), 122 Ill. 2d 367, 377; *People v. James* (1986), 111 Ill. 2d 283, 290.) To be entitled to post-conviction relief, a defendant must establish a substantial deprivation of Federal or State constitutional rights in the proceedings that produced the judgment under attack (Ill. Rev. Stat. 1985, ch. 38, par. 122—1). Rulings on issues that were previously raised at trial and on direct appeal are *res judicata*, and issues that could have been raised in the original proceedings, but were not, will be deemed waived. *People v. Silagy* (1987), 116 Ill. 2d 357, 365.

The primary constitutional claim undergirding the defendant's arguments for post-conviction relief is that he was denied the effective assistance of counsel both at trial and on direct appeal. In addition, the defendant raises a number of challenges to the constitutionality of the Illinois death penalty statute. The State responds that several of the issues pertaining to trial counsel's representation must be deemed waived because they were matters of record and therefore could have been raised on direct appeal. We have previously held, however, that counsel cannot be expected to argue his own incompetency (*People v. Gaines* (1984), 105 Ill. 2d 79, 91), and such a rule would be applicable here, where trial

counsel hired the attorney who handled the appeal. Moreover, we note that the defendant has made the additional allegation that appellate counsel was ineffective for failing to raise the matters on direct appeal. The alleged ineffectiveness of appellate counsel will not operate as a bar to consideration of those issues. See *People v. Frank* (1971), 48 Ill. 2d 500, 503-04.

The constitutional guarantee of the assistance of counsel (U.S. Const., amends. VI, XIV) entails the right to the effective assistance of counsel (*Cuyler v. Sullivan* (1980), 446 U.S. 335, 344, 64 L. Ed. 2d 333, 343-44, 100 S. Ct. 1708, 1716), both at trial and on a defendant's first appeal as of right (*Evitts v. Lucey* (1985), 469 U.S. 387, 396-97, 83 L. Ed. 2d 821, 830-31, 105 S. Ct. 830, 836-37). The applicable standard for gauging the performance of counsel is that provided by *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052. (See *People v. Albanese* (1984), 104 Ill. 2d 504, 526-27 (adopting standard).) To prevail on an allegation of ineffective assistance of counsel, a defendant must establish both that counsel's performance was deficient and that he was prejudiced as a result of the deficiency.

The defendant's first group of arguments concerns the trial proceedings. The defendant first argues that trial counsel's cross-examination of one of the State's witnesses at trial opened the door on redirect examination to damaging testimony suggesting that the defendant had intimidated the witness. The defendant contends that trial counsel's cross-examination was ineffective, and that appellate counsel was ineffective for failing to raise the issue on direct appeal.

The witness, Julio Lopez, testified at trial to a statement made by the defendant describing the murders of the three youths. On cross-examination, defense counsel asked Lopez whether he had visited the defendant in the

Cook County Jail with other Latin Kings a month after speaking with the police about the case. Lopez said that he had made such a visit, in the company of one gang member. On redirect examination Lopez explained that the defendant had summoned him to the jail so that he could assure the defendant that he had not cooperated with the authorities. Lopez also testified that he had been threatened by relatives of codefendant Juan Caballero but that he had not been threatened by relatives of the defendant.

Defense counsel in the present appeal professes not to understand why trial counsel asked Lopez about his visit to the defendant in jail. The record clearly demonstrates, however, that trial counsel was attempting to establish Lopez's continued affiliation with the gang at the time of the visit, contrary to his testimony. Lopez testified that he had left the gang around the time he talked to the police about the case, in March 1979. Defense counsel impeached Lopez with his earlier statement to police that he had quit the gang in August 1978. During further cross-examination, Lopez declared that he had quit the gang in March 1979, that he had lied to police when he told them that he quit in August 1978, and that this was the only lie he had ever told. Counsel then asked Lopez about his visit to the defendant in jail, which, according to Lopez's testimony, would have occurred in April 1979, a month after he spoke with the police.

Unlike the defendant, we do not believe that trial counsel's inquiry should be condemned. Lopez was one of two principal witnesses against the defendant—the other was the assistant State's Attorney who took a statement from the defendant. Lopez was the only witness, however, who testified that the defendant said that he had a gun and that he checked the bodies after the stabbings to make sure the victims were dead. Lopez's

credibility was important to the State's case, and defense counsel attacked the witness vigorously. After Lopez insisted that the only lie he told in his life was his statement to police that he left the gang in August 1978 rather than in March 1979, defense counsel may well have believed that evidence suggesting the witness' continued affiliation with gang members in April 1979 would be more damaging than information about the defendant's interest in what the witness had told the authorities. Counsel's decision to impeach the witness in this manner is precisely the type of strategic decision that *Strickland* counsels against attempting to second-guess. In light of the overwhelming evidence of the defendant's guilt, we cannot say that counsel's opening the door to the information determined the outcome of the trial.

The defendant next alleges that during closing argument at trial the prosecutor improperly commented on the defendant's failure to provide authorities with a written statement after making an initial, oral statement. The defendant asserts that the prosecutor's remark was inconsistent with the rule expressed in *Doyle v. Ohio* (1976), 426 U.S. 610, 619, 49 L. Ed. 2d 91, 98, 96 S. Ct. 2240, 2245, which found a due process violation in "the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings." (See also *Wainwright v. Greenfield* (1986), 474 U.S. 284, 88 L. Ed. 2d 623, 106 S. Ct. 634.) The defendant argues, as grounds for post-conviction relief, that appellate counsel was ineffective in failing to raise the issue on direct appeal. The State responds that the prosecutor's comment was invited by trial counsel's own argument to the jury and, furthermore, that whatever error occurred was harmless.

Testimony concerning the defendant's refusal to make a statement in the presence of a court reporter was pre-

sented without objection at trial, during the testimony of Assistant State's Attorney Barnett. Barnett testified that he talked to the defendant on two separate occasions early in the morning on March 4, 1979, following the defendant's arrest in connection with the present offenses. On direct examination, Barnett explained that at the start of the questioning he advised the defendant of the *Miranda* rights, which the defendant elected to waive. According to Barnett, during the first conversation, which lasted 20 to 25 minutes, the defendant gave a statement concerning the murders of the three youths. With respect to the second conversation, Barnett testified only that it was much briefer than the first, lasting but several minutes. Barnett then related the defendant's statement to the jury. On cross-examination defense counsel established that Barnett's testimony concerning the defendant's statement was based on the assistant State's Attorney's recollection of his conversation with the defendant and on a memorandum that he had later prepared from handwritten notes made by him during the conversation. Defense counsel was able to show that several facts mentioned by Assistant State's Attorney Barnett as having been related to him by the defendant did not appear in the memorandum. On redirect examination, the prosecution inquired whether the defendant made a written statement, and the witness replied that the defendant did not wish to make a written statement after he made the oral statement.

Defense counsel's only objection to the redirect examination about the defendant's refusal to repeat his statement in the presence of the court reporter was that the questioning might bring out information of the defendant's alleged commission of another crime. It appears, from the attorneys' side bar discussion, that the defendant, in refusing to give a second statement to Assistant State's Attorney Barnett, mentioned another murder

case in which he had been asked to give a statement. The apparent purpose of defense counsel's objection to the testimony was, therefore, to prevent the jury from learning about the other murder case. During the side bar discussion defense counsel explained, "Now, the problem we get into, the answer is that he refused to take a court reporter's statement. I don't mind him saying that, what I want to prevent is him saying well, he said I was charged with murder before and I gave a statement before, but then I refused to take it." To avoid any reference to the defendant's reason for refusing to give a statement in the court reporter's presence, defense counsel suggested that the prosecutor ask, "Isn't it a fact he would not give a court reporter's statement?" Later, in open court, the prosecutor did just that, eliciting from the witness testimony that the defendant refused to make a statement in the presence of a court reporter after being shown photographs depicting the victims' injuries.

In closing argument defense counsel stressed the relative inexperience of the assistant State's Attorney who conducted the interrogation and attacked the accuracy and completeness of his recollection. Referring to the report Barnett prepared after questioning the defendant, defense counsel said:

"As far as what is in this report, the only record, the only person that ever spoke to Ruiz is Randy Barnett. 1:15 in the morning, 13 hours or so after he is in custody. No one else. Randy Barnett is apparently the only person in the room talking to my client because no one else comes forward to discuss this conversation, only the assistant State's Attorney Randy Barnett. We don't have to bring anybody in and we don't have to explain it because it's their case to prove to you beyond a reasonable doubt."

In rebuttal argument the prosecutor made the remarks now challenged by the defendant:

> "Talk about Randy Barnett's memorandum. Same thing, then he talks about Randy Barnett who he calls a very young, inexperienced assistant State's Attorney. Well, that's news to me. He does the same thing to Trainor and myself. Just told you what great guys we are. What professionals we are, but he's young and inexperienced and he says he didn't take notes copious enough for his benefit. He didn't do his job and combined with that and the fact that Flood and Julio are liars, you must cut my man loose. Garbage, that's garbage.
>
> Why don't we have something in writing? Why don't we have a 23-page statement like Caballero? Why don't we have anything in writing? Because he wouldn't give a written statement.
>
> MR. GREEN: Object to anything about Caballero.
>
> THE COURT: The jurors have heard the evidence.
>
> MR. KANE: He would not give a written statement.
>
> Let's look at the circumstances under which he would not give a written statement."

The prosecutor went on to assert that the defendant, after giving Assistant State's Attorney Barnett an oral statement, realized that he would not later be able to dispute that version of events if it were also memorialized in written form. The prosecutor suggested that the defendant therefore declined to provide a written statement, and that, contrary to the theory of the defense, he had not cooperated with authorities.

The defendant's assertion before this court that trial counsel objected to the prosecutor's comment on the defendant's failure to make a statement in the presence of a court reporter is not supported by the record. At trial, counsel succeeded in preventing the assistant State's Attorney from repeating the defendant's reason for declining to give a statement in the presence of the court reporter; defense counsel did not otherwise object

to the testimony concerning the defendant's failure to make a second statement. Similarly, in closing argument defense counsel's sole objection was directed at the prosecutor's reference to what codefendant Caballero had done; contrary to the defendant's assertion here, trial counsel did not object to the comment about the defendant's refusal to provide a statement in the court reporter's presence.

We do not agree with the defendant that appellate counsel was ineffective in failing to raise on direct appeal the contention that the prosecutor's argument violated *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240. First, it is not clear that the prosecutor's argument was inconsistent with the *Doyle* principle. This court has previously permitted the State to introduce, in its case in chief, evidence that a defendant made an oral statement but refused to provide a written statement, on the theory that the defendant did not exercise his right to silence. *People v. Christiansen* (1987), 116 Ill. 2d 96, 119-20.

In the alternative, we consider that the remark was invited by defense counsel's own argument to the jury. In cross-examining the assistant State's Attorney, defense counsel challenged the witness' recollection of the interrogation of the defendant and questioned the accuracy and completeness of the memorandum summarizing the interview. On redirect examination, Barnett testified, without objection, that the defendant had refused to give a statement in the presence of a court reporter. Later, in argument, defense counsel expressly referred to the State's failure to present further testimony corroborating Barnett's account of the interrogation. In response, the prosecutor accurately noted that the defendant had refused to provide a written statement. As we have seen, it was part of the defendant's strategy at trial to question the thoroughness of the State's investigation of

the case. The prosecutor's comment was invited by defense counsel's own argument and thus was not error, much less plain error. (See *State v. Bell* (La. 1984), 446 So. 2d 1191; *State v. Hjerstrom* (Minn. 1979), 287 N.W.2d 625.) Accordingly, we do not consider that appellate counsel was ineffective for failing to raise on direct appeal a challenge to this aspect of the prosecutor's rebuttal argument.

The defendant's final allegation of trial error involves comments by the State in closing argument concerning certain police reports. The prosecutor told the jurors that he would like to provide them with the police reports. The trial judge sustained counsel's objection to the comment. The defendant argues that appellate counsel was ineffective in failing to raise this issue on direct appeal as a ground for a new trial.

The defendant challenges the following remarks, which were made during the State's rebuttal argument:

"MR. KANE [an assistant State's Attorney]: Second thing is this, criticize Flood for something that's not in the police report. Ladies and gentlemen, I would gladly give you the police reports.

MR. GREEN [defense counsel]: Objection.

MR. KANE: You go back to the jury room—

MR. GREEN: Objection.

MR. KANE: That's not how we try cases.

MR. GREEN: Objection.

MR. KANE: We try the case on the evidence.

MR. GREEN: I object.

THE COURT: Objection is sustained. The police reports do not go back to the jury and the police reports have nothing to do with the case, ladies and gentlemen.

MR. GREEN: He knows that.

THE COURT: They are hearsay and somebody else's interpretation.

MR. KANE: They have as much to do with the case as Mr. Green has. He wants you to disregard what was in

the reports for the rest of the case. Use your common sense, please."

Later, defense counsel moved for a mistrial because of the prosecutor's comments concerning the police reports. The trial judge denied the motion, stating that his previous ruling on the defendant's contemporaneous objection was sufficient to cure any error.

Appellate counsel did not raise the point on direct appeal as grounds for a new trial, and the defendant now contends that counsel was ineffective in failing to do so. We do not agree. The trial judge sustained the defense objection to the comment and told the jurors to disregard it. As the judge stated in denying the defendant's subsequent motion for a mistrial, such an admonition is generally sufficient to cure error occurring in argument. (See *People v. Baptist* (1979), 76 Ill. 2d 19, 30.) Not every conceivable trial issue can realistically be raised on appeal, and appellate lawyers will often limit their presentations accordingly. (See *Jones v. Barnes* (1983), 463 U.S. 745, 751-53, 77 L. Ed. 2d 987, 993-94, 103 S. Ct. 3308, 3312-13; *People v. Frank* (1971), 48 Ill. 2d 500, 506.) In the present case, it is certainly reasonable to assume that appellate counsel believed that the prosecutor's comment did not pose a significant issue, in view of the trial judge's ruling sustaining the defendant's objection. We decline to conclude here that counsel was ineffective in failing to present the point as an issue in the defendant's direct appeal. See *Smith v. Murray* (1986), 477 U.S. 527, 535-36, 91 L. Ed. 2d 434, 445-46, 106 S. Ct. 2661, 2666-67.

The defendant also raises in his post-conviction petitions several contentions pertaining to his sentencing hearing. The defendant waived his right to a jury for purposes of the death penalty hearing, and the proceeding was therefore conducted before the trial judge alone. The defendant now argues as a ground for post-convic-

tion relief that his waiver of a sentencing jury was not knowing and voluntary, alleging that he was not informed by trial counsel or by the trial judge of the rule that the favorable vote of a single juror would have been sufficient to preclude imposition of the death penalty. In an affidavit filed in the circuit court in support of the post-conviction petitions, the defendant averred that trial counsel met with him for only two or three minutes concerning the jury waiver and that counsel failed to advise him of the nonunanimity rule. The defendant argues that without that information he was unable to effect a knowing and voluntary waiver. The defendant concludes that he was denied the effective assistance of counsel because his trial attorney failed to discuss with him that aspect of capital sentencing procedures.

The defendant's waiver of a sentencing jury occurred at the conclusion of the guilt-and-innocence stage of the proceedings. After the jury returned its guilty verdicts on the charges against the defendant, the State requested that a death penalty hearing be held. The following colloquy ensued:

"MR. GREEN [defense counsel]: We are going to waive the jury and submit the cause to the court, but I ask the matter be continued for a week.

THE COURT: I want to make sure your client understands what he's doing.

Do you understand that the provisions of the act at this time, first two questions, are left, Number one, whether this case would fit under the death provisions of the Illinois Statute and number two, whether you should be entitled to the penalty of death in the State of Illinois.

This can be decided by this jury or you may waive your right to this jury and have the Court, and the Court alone decide whether it should be imposed or not, meaning that I alone will have that responsibility. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you wish to waive your right to a jury trial as far as this is concerned, and have the court and the Court alone decide whether the death penalty should be imposed or not?

THE DEFENDANT: Yes.

THE COURT: This you discussed with your attorney before?

THE DEFENDANT: Yes sir.

THE COURT: If that is your desire, you will sign that paper and we will proceed with the hearing at a later date, and what I would do is, since I am going to have the responsibility, I would order the pre-sentence investigation report.

MR. GREEN: April 8th?

THE COURT: I don't know if I can get it that fast.

MR. KANE [an assistant State's Attorney]: The State will be filing a petition on Monday with the Clerk of the Court. I will send a copy to Mr. Green's office so the Defense can see it.

THE COURT: Do you understand that this is a Constitutional right that is guaranteed to you, do you understand that sir?

THE DEFENDANT: Yes, sir.

THE COURT: Let the record show that he has signed the waiver in open court."

The trial judge's admonition to the defendant was sufficient to establish a voluntary and knowing jury waiver. The judge explained to the defendant that he was waiving the right to have the capital sentencing issues submitted to a jury and that the decision would therefore be made by the judge alone. The defendant makes no challenge to the trial judge's enhancement of the right being claimed to constitutional status; it has been held that the right to a jury at a capital sentencing hearing is, in Illinois, wholly statutory. *People v. Erickson* (1987), 117 Ill. 2d 271, 289.

We have in the past declined to impose a requirement that a defendant be expressly advised of the nonunanim-

ity rule—that the favorable vote of a single juror will preclude imposition of the death penalty—as a condition of a valid jury waiver at a capital sentencing hearing. (*People v. Erickson* (1987), 117 Ill. 2d 271, 295-96; *People v. Madej* (1985), 106 Ill. 2d 201, 220-21.) Nor is there a requirement that the trial judge advise a defendant that the jury's decision to impose the death penalty must be unanimous. *People v. Evans* (1988), 125 Ill. 2d 50, 89-90; *People v. Ashford* (1988), 121 Ill. 2d 55, 81-82; *People v. Guest* (1986), 115 Ill. 2d 72, 107; *Madej*, 106 Ill. 2d at 220-21; *People v. Albanese* (1984), 104 Ill. 2d 504, 536 (stating that the preferred procedure is to provide such an admonition).

Similarly, we do not consider that trial counsel was ineffective for failing to advise the defendant of the non-unanimity rule, assuming that allegation to be true. The defendant knew of his right to have a jury during the sentencing phase of the proceedings, and the record reveals that he waived the right knowingly and voluntarily. The defendant does not allege that he would not have waived his right to a jury had he known of the nonunanimity rule.

The defendant raises two other arguments concerning trial counsel's representation at the capital sentencing hearing. First, the defendant alleges that counsel's examination of the only defense witness at the sentencing hearing opened the door to damaging evidence that the trial judge improperly relied on in deciding to sentence the defendant to death. Second, the defendant argues that trial counsel failed to investigate possible sources of mitigating evidence and failed to introduce favorable evidence that was readily available.

At the defendant's sentencing hearing, defense counsel argued the related contentions that the death penalty could not, and should not, be imposed on one, such as the defendant, convicted of murder under an accountabil-

ity theory. The sole witness presented by the defense was a police officer, who testified that the defendant exhibited remorse when he was questioned about the instant offenses.

The defendant contends that counsel erred in opening the door to testimony regarding the confession of codefendant Juan Caballero, which portrayed the defendant as having taken a more active role in the crimes than the defendant admitted in his own statement to authorities. At the sentencing hearing, defense counsel called as a witness Chicago police officer Lee Epplen, who had questioned the defendant about the case following his arrest. Officer Epplen testified that he showed portrait photographs of the three victims to the defendant, who began crying when he saw them. According to the officer, the defendant picked up each of the photographs in turn and identified which of his accomplices had murdered the particular victim. According to Officer Epplen, the defendant said that he had begged the accomplices not to kill the victims. On defense counsel's redirect examination, Officer Epplen testified that the defendant's description of who had committed each murder coincided with Juan Caballero's statement. On further cross-examination the prosecutor elicited, over a defense objection, the information that Caballero, in his statement, said that the defendant had a gun. Later, in sentencing the defendant, the trial judge stated:

"Now as far as I'm concerned, I cannot see how the Defendant here could have been scared in that alley. This argument is not only rejected by Mr. Julio Lopez when the Defendant here is bragging about the killing of these three individuals, it is also rejected by the statement of Juan Caballero, contrary to what Counsel says."

The defendant contends that the trial judge improperly relied on Caballero's statement in deciding to impose the death penalty. The defendant argues that trial

counsel was ineffective in opening the door to the information, and that appellate counsel was ineffective in failing to raise the issue on direct review. Accompanying the defendant's *pro se* post-conviction petition was an affidavit by the attorney who prepared the defendant's petition for *certiorari* following this court's decision on direct appeal affirming the convictions and death sentence. The attorney, who had not previously represented the defendant in these proceedings, attested that the trial judge's use of codefendant Caballero's statement in imposing sentence violated the defendant's confrontation right and posed a meritorious issue that should have been argued on direct appeal to this court.

We do not believe that trial counsel was ineffective for referring to codefendant Caballero's statement, and we do not consider that the trial judge made an improper use of the information. It is true that the defendant was granted a severance and was tried separately from Caballero to avoid the problems that would arise from the use at a joint trial of a nontestifying codefendant's confession. (See *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620.) The two cases were therefore presented at the same time in the same courtroom to different juries, with the same judge presiding. We do not consider that trial counsel was ineffective in choosing to pursue the challenged line of questioning. Counsel's inquiry enabled him to present information corroborating the defendant's own account of his actions during the commission of the crimes. Moreover, we do not believe that the trial judge relied on Caballero's statement in deciding to impose the death penalty. In referring to Caballero's statement the trial judge simply noted that it, like Julio Lopez's testimony, rejected the defense theory that the defendant was not an active or willing participant in the murders. At trial, Lopez had recounted a statement made by the defendant describing

the murders, in which the defendant was portrayed as an active, willing participant. We therefore conclude that trial counsel was not ineffective in this regard and that, in any event, the trial judge did not make use of Caballero's statement in sentencing the defendant to death.

The defendant challenges trial counsel's representation at the capital sentencing hearing on an additional ground. The defendant alleges that counsel failed to investigate the defendant's personal history and failed to inquire of the defendant or his family members whether they were aware of mitigating information that could be used at the sentencing hearing. The defendant concludes that counsel was ineffective in failing to conduct such an investigation and to present the readily available information.

In support of those contentions the defendant submitted affidavits from his parents, from seven of his siblings, and from two friends. The affiants described the defendant as an obedient son and good brother who participated in sports and attended church as a child. Several affiants stated there was pressure in the neighborhood to become involved in street gangs; one sister, explaining the defendant's involvement in gangs, described the defendant as "more a follower than a leader." The affiants said that the defendant expressed remorse for the offenses here and that he warned his brothers not to become involved in gangs. Two former girlfriends of the defendant also submitted affidavits. One of the women, the mother of the defendant's child, stated that at the time of the pregnancy the defendant persuaded her not to have an abortion. She also indicated that the defendant maintains contact with his daughter. Family members attended the court proceedings regularly, but none of them were asked to testify as witnesses at the sentencing hearing. In an affidavit, the defendant asserted that counsel met with him only once

in the month-long period between the trial and the sentencing hearing and that counsel did not discuss the sentencing proceedings with him. The defendant's mother, in her affidavit, attested that defense counsel did not discuss the sentencing hearing with any members of the family.

The State does not dispute the allegations that trial counsel failed to consult with the defendant and his family in preparation for the sentencing hearing, nor does the State challenge the existence or content of their proposed testimony. Rather, the State's sole response is that trial counsel chose to pursue a strategy different from the one now suggested by the defendant in his post-conviction petitions and that counsel was not ineffective in doing so.

It is a constitutional requirement that a capital sentencing scheme allow an individualized consideration of the offense and the offender. (*Sumner v. Shuman* (1987), 483 U.S. 66, 73-76, 97 L. Ed. 2d 56, 64-66, 107 S. Ct. 2716, 2721-23; *Woodson v. North Carolina* (1976), 428 U.S. 280, 303-05, 49 L. Ed. 2d 944, 960-61, 96 S. Ct. 2978, 2990-91 (plurality opinion).) Accordingly, the sentencing authority in a capital case may not refuse to consider, or be barred from considering, relevant mitigating evidence concerning the offender or the circumstances of the offense. See *Hitchcock v. Dugger* (1987), 481 U.S. 393, 398-99, 95 L. Ed. 2d 347, 353, 107 S. Ct. 1821, 1824; *Skipper v. South Carolina* (1986), 476 U.S. 1, 4-5, 90 L. Ed. 2d 1, 6-7, 106 S. Ct. 1669, 1672; *Eddings v. Oklahoma* (1982), 455 U.S. 104, 110-12, 71 L. Ed. 2d 1, 8-9, 102 S. Ct. 869, 874-75; *Lockett v. Ohio* (1978), 438 U.S. 586, 604-05, 57 L. Ed. 2d 973, 990, 98 S. Ct. 2954, 2964-65 (plurality opinion).

In the present case, the proposed testimony from the defendant's family members and friends would have been admissible at the sentencing hearing and would

have been relevant to the determination whether the defendant should be sentenced to death. Counsel's alleged failure to investigate and present the evidence in question cannot be defended as an "on-the-spot decision" (see *People v. Caballero* (1989), 126 Ill. 2d 248, 288 (Ryan, J., dissenting)), unless, of course, it can be said that it was proper for counsel to wait until the day of the death penalty hearing to formulate a strategy. (See *Blake v. Kemp* (11th Cir. 1985), 758 F.2d 523 (defense counsel made no preparation for death penalty hearing, expecting, incorrectly, that defendant would be found not guilty by reason of insanity).) The favorable testimony from the defendant's family members and friends might have supported the defense theory at the sentencing hearing that the defendant was not an active or willing participant in the offenses. For example, several of the potential witnesses attributed the defendant's involvement in gangs to neighborhood pressure to join gangs. For the most part, the testimony would not have been cumulative of evidence already presented at trial or sentencing; the only information that might have been repetitious would have concerned the defendant's expression of remorse for the present offense. The defendant's family members and friends would have provided a portrayal of the defendant that was not apparent from the evidence already admitted. Indeed, the record before us does not suggest any reasons for not presenting the evidence. When "the drawbacks of potentially mitigating evidence are obvious from the record," it may be assumed that counsel decided not to present the evidence for those reasons. (*People v. Caballero* (1989), 126 Ill. 2d 248, 275.) In this case, however, we do not discern any obvious disadvantages in the testimony or the witnesses. (*Cf. People v. Owens* (1989), 129 Ill. 2d 303, 311-12 (counsel's decision not to present certain witnesses at death penalty hearing reasonable in light of evident infir-

mities of testimony and witnesses).) We note, however, that in the absence of an evidentiary hearing on the post-conviction petitions, we are also unable to say whether the testimony would have produced any advantage.

For those reasons, we decline to assume on this record that counsel's alleged failure to investigate and present the mitigating evidence at issue was a matter of strategy rather than a deficiency in performance. We understand, of course, that deference must be accorded to the strategic decisions of counsel. In *Strickland* the Court stated:

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." (466 U.S. at 690-91, 80 L. Ed. 2d at 695, 104 S. Ct. at 2066.)

In light of the unchallenged and unheard allegations in the defendant's post-conviction petitions, we are not prepared to assume that the course chosen by counsel was justified. Counsel has a duty to investigate potential sources of mitigating evidence, or to have reason not to make such an investigation; according to the allegations before us, counsel inexplicably failed to conduct such an investigation. We do not mean to suggest, however, that trial counsel was required to formally interview each family member and friend; it may be that in discussions with those persons counsel was made aware of their tes-

timony and of their value as witnesses. But, on the present record, we are unable to conclude that counsel's course was reasonable, or that he had some other valid strategy in mind. We also make no determination in the present appeal of the second part of the *Strickland* test. In the absence of a more complete record, we make no attempt here to calculate whether counsel's failure to present the suggested testimony rendered the outcome of the sentencing hearing unreliable. An evidentiary hearing on the allegations is warranted, and we therefore remand the cause to the circuit court for an evidentiary hearing on these portions of the defendant's petitions for post-conviction relief.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed in part and reversed in part. The cause is remanded to the circuit court for an evidentiary hearing on those portions of the defendant's post-conviction petitions that allege that the defendant was denied the effective assistance of counsel because of trial counsel's failure to investigate additional sources of mitigating evidence and present the evidence at the capital sentencing hearing.

*Judgment affirmed in part*
*and reversed in part;*
*cause remanded.*