**STATE of Minnesota, Respondent,**

v.

**Ray HALVERSON, Appellant.**

**No. CX–85–1255.**

Court of Appeals of Minnesota.

Feb. 4, 1986.

Review Denied March 21, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Fred R. Kraft, Mower County Atty., Austin, for respondent.

C. Paul Jones, State Public Defender, Mark Anderson, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by SEDGWICK, P.J., and RANDALL and CRIPPEN, JJ., with oral argument waived.

## OPINION

RANDALL, Judge.

Ray Halverson appeals from judgment of conviction entered upon a jury verdict of guilty of terroristic threats under § 609.-713, subd. 1 (1984).

## FACTS

Appellant's conviction was for a telephone call to the mother of the man his ex-wife (Pat Halverson) was dating in which he threatened to kill the man if he continued to date her.

Appellant and Pat Halverson were separated in September, 1982, and divorced in July, 1983. Pat Halverson testified that after the separation she began receiving a large number of hang-up calls in which the telephone would ring, she would answer, and the caller would hang up immediately. The calls often occurred after she had been out for the evening. She suspected appellant because the frequency of the calls varied according to how well the separation was proceeding. When she picked up the telephone without saying anything sometimes appellant would eventually respond. The telephone calls stopped from July to September, 1984, when appellant was in jail. Pat Halverson testified that she finally confronted appellant in September, 1984, because the calls were disturbing the children:

> I said "They're afraid of you and it upsets them so much when they get them because they know what's going on." And I said "It's got to stop." And he looked at the boys and he says, "Okay. It won't happen again."

Appellant denied saying this. The calls persisted through 1984.

Pat Halverson also testified that during the separation her husband twice strangled her until she became unconscious, once when he saw her talking to a male friend at a bar. Appellant assaulted the friend and then strangled Pat Halverson while she was calling the police. At some point Pat Halverson obtained a restraining order against him.

One of appellant's witnesses, William Bodensteiner, confirmed appellant's extreme jealousy, testifying that appellant had difficulty dealing with the divorce and accepting Pat Halverson's dating other men. Bodensteiner testified that appellant was particularly angry with Pat Halverson because she dated Larry Arndt. Appellant told Bodensteiner that he wanted to kill his ex-wife.

Larry Arndt testified that he received hang-up calls from late 1983 through 1984. The caller would hang up as soon as the telephone was answered. The calls were made either to his office, to his ex-wife's home, or to his mother's home. During this period he usually lived with his mother. The calls stopped between July and September, 1984, while appellant was in jail. Often when he was at Pat Halverson's she would receive a hang-up call.

Genevieve Arndt, Larry Arndt's mother, testified that she received hang-up calls during this same period. She also received suspicious calls when the caller would speak. In one instance, the caller called at

12:30 a.m., claimed to be a student, and asked about Larry Arndt's marital status.

Genevieve Arndt testified that on November 25, 1984, she received a hang-up call at about 3:30 a.m. At 5:30 a.m. a man called asking for Larry Arndt:

> [He] said, "I've been watching him out here at Pat Halverson's all night and you can tell Larry the next time that he's out here, that I'm going to kill him." And I said, you know, "What?" And he said, "He was in bed out to Pat Halverson's." And I said "He's not. That is not true." And I said, "You're crazy." And he said, "Yes. I know I'm crazy, but I will kill him and you tell him I said so."

In December, 1984, Genevieve Arndt listened to a recording Pat Halverson had made of appellant's voice and identified appellant as the person who made this threatening call and as the man who posed as a student. Genevieve Arndt had never met appellant or otherwise heard him speak.

Appellant admitted to "grabbing" Pat Halverson when she claims he strangled her, but denied that she passed out. He admitted that he abused his wife during the marriage.

Appellant was in jail from July through early September, 1984, because he was arrested on a misdemeanor property damage charge arising out of a traffic accident with Larry Arndt. He was acquitted of this charge and no one mentioned it at trial.

Before trial began, appellant moved to prohibit reference to his misdemeanor assault conviction for assaulting Pat Halverson. The trial court ruled that the conviction could not be mentioned but the facts of the assault could be disclosed to show the relationship between appellant and Pat Halverson. No witnesses mentioned the conviction at trial.

Appellant also moved to exclude evidence of prior hang-up calls received by Pat Halverson. The trial court denied this motion.

Finally, appellant's counsel questioned admission of any testimony that Ray Halverson was in jail. It is not clear whether counsel actually moved to exclude such testimony. When counsel questioned the admissibility of such testimony, the trial court stated that the question need not be answered before the trial began. Appellant's counsel made no objection at the time of the testimony. Appellant himself referred to his being in jail several times during his testimony.

## ISSUES

1. Did the trial court err in admitting testimony that Genevieve Arndt, Larry Halverson, and Pat Halverson had received numerous hang-up telephone calls?

2. Did the trial court err in admitting testimony that appellant had assaulted Pat Halverson two times?

3. Did the trial court err in allowing testimony that appellant had spent time in jail?

4. Was appellant denied his right to represent himself at trial?

## I

### Prior Hang-up Telephone Calls

■ The trial court did not err in allowing this evidence of calls received by Larry and Genevieve Arndt and Patricia Halverson.

> As a general rule, evidence of other crimes is not admissible to prove the character of a defendant or his guilt in the offense charged. *State v. Titworth*, 255 N.W.2d 241 (Minn.1977); Minn.R. Evid. 404(b). It may be admissible for other purposes, however, such as to demonstrate motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Rule 404(b).

*State v. Black*, 291 N.W.2d 208, 214 (Minn. 1980). Evidence of other crimes is also admissible to establish a common scheme or plan. *State v. Dinneen*, 300 Minn. 354, 357, 220 N.W.2d 292, 294 (1974). Appellant does not claim on appeal that the State failed to provide the requisite notice that it would offer the *Spriegl* evidence at trial.

Appellant claims that the trial court abused its discretion by allowing it. The harassing calls to Pat Halverson and Genevieve and Larry Arndt all followed similar patterns. All three received hang-up calls during 1983 and 1984. None of the three received calls while appellant was in jail. Pat Halverson's identification of appellant as the man making the calls to her was relevant to the identity of the person who made the calls to Genevieve Arndt.

Appellant claims that the evidence that Ray Halverson made the calls to Patricia Halverson was not clear and convincing as required by *State v. Matteson,* 287 N.W.2d 408, 411 (Minn.1979). We hold that the trial court did not abuse its discretion in finding that the *Spriegl* evidence offered met the threshold of clear and convincing. Patricia Halverson testified that appellant told their children that the calls would not happen again. When Patricia Halverson would pick up the telephone without saying anything, sometimes appellant would begin talking after a period of silence. Finally, the calls varied according to how the separation was going. Proof beyond a reasonable doubt is not required. *Id.*

■ Appellant claims that because Genevieve Arndt gave direct testimony identifying appellant, the *Spriegl* evidence on identity was not admissible. *Spriegl* evidence on identity is not admissible unless "evidence of defendant's identity is otherwise weak or inadequate, and * * * is necessary to support the state's burden of proof." *Id.* The State's evidence of identity was weak without the *Spriegl* evidence, and the corroborating circumstantial evidence was necessary to meet the burden of proof.

Finally, appellant claims that the prejudicial effect of the evidence of harassing calls outweighed its probative value. That determination is within the discretion of the trial court, which must balance the State's legitimate need for *Spriegl* evidence against the defendant's right to a fair trial. On the facts of this case, we hold that the trial court did not err in determining that the probative value outweighed the potential for prejudice. The witnesses did not testify in detail about each call, but made general statements and gave a few specific examples. The testimony was not cumulative.

## II

### *Prior Assaults*

■ Appellant argues that evidence he assaulted his ex-wife was not relevant to threatened assaults on Larry Arndt, and was more prejudicial than probative. This evidence is relevant to motive and identity. These assaults explained appellant's continuing abuse of Pat Halverson, his jealousy of her, and his motive for threatening Larry Arndt. The threats to Larry Arndt were also part of appellant's scheme of harassing his ex-wife to stop her from dating other men. The evidence was probative. The trial court did limit the potential for undue prejudice by forbidding mention of appellant's misdemeanor conviction for one of the assaults. The State complied with this ruling. The trial court did not err in allowing this evidence.

## III

### *Jail*

■ The trial court did not err in failing to exclude reference by witnesses to appellant's incarceration. We recognize that this kind of evidence can be very prejudicial. *State v. Hjerstrom,* 287 N.W.2d 625, 628 (Minn.1979).

Here the evidence was admissible because its probative value outweighed the potential for unfair prejudice. *See* Minn.R. Evid. 403; *Hjerstrom,* 287 N.W.2d at 628. The evidence of appellant's inability to make telephone calls because of his incarceration is relevant to the identity of the caller, given that the calls stopped while appellant had limited access to telephones.

Appellant claims that the probative value is limited because he had access to telephones while on Huber release. His conduct while on *Huber* release was being monitored, and it was fairly difficult for

appellant to place calls. The admission of evidence as to the days appellant was in jail was a judgment call for the trial court taking into account the balancing of relevancy versus prejudicial value, and we do not find an abuse of discretion. The prejudicial value of the evidence was limited by a cautionary instruction and by the fact that no evidence of the nature of the crime for which appellant was in jail was introduced.

### IV

#### *Right of Self-Representation*

 Appellant personally asserts that he was denied his constitutional right to represent himself. We have received and considered his supplemental pro se brief. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) held that the sixth and fourteenth amendments' right to assistance of counsel includes the right of the accused to refuse representation by a lawyer. The waiver of counsel's assistance must be knowing and intelligent, "clear and unequivocal," and the defendant must articulately and unmistakably assert his right of self-representation. *United States v. Weisz,* 718 F.2d 413, 425 (D.C.Cir.1983).

Appellant stated at his first appearance that he wanted access to the law library and telephone so that he could defend himself. Appellant made these requests while discussing his ability to hire private counsel and the possibility of obtaining a court-appointed attorney. Later, the court did appoint counsel and appellant voiced no objection. Appellant waived his right to self-representation. *Brown v. Wainwright,* 665 F.2d 607, 611 (5th Cir.1982).

### DECISION

The trial court's evidentiary rulings on *Spreigl* and the limited testimony allowed relative to the time appellant spent in jail were not error.

Affirmed.