*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0189**

State of Minnesota,
Respondent,

vs.

Marstyn Ryan Taft,
Appellant.

**Filed December 21, 2015
Affirmed
Randall, Judge***

Dakota County District Court
File No. 19HA-CR-14-2463

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Haig T. Huynh, Assistant County Attorney, Hastings, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Susan Andrews, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Larkin, Judge; and Randall, Judge.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**RANDALL**, Judge

Appellant Marstyn Ryan Taft challenges the district court's ruling to admit evidence of a prior burglary in order to prove motive and intent at his trial for attempted first-degree burglary, arguing that this *Spreigl* evidence was improper because it had no legitimate probative value and was highly prejudicial. We affirm.

## FACTS

On June 19, 2014, at approximately 9:00 a.m., Maureen Dunnigan returned to her Mendota Heights home after shopping at a grocery store. It was raining heavily that day. Dunnigan parked her car in her garage, and then entered her home. As Dunnigan walked into the "mud room," she heard a "loud crash of glass." She then heard another louder "crash of glass" and a "thunk." Dunnigan walked further into her home to investigate the sounds and observed a man standing on her back patio. Dunnigan ran from her home and called law enforcement from her neighbor's residence.

Officer Larrive of the Mendota Heights Police Department responded to the reported burglary in progress at Dunnigan's home. Officer Larrive walked to the back of the home and observed a man, later identified as Taft, standing on the patio and looking into the residence. Officer Larrive identified himself as the police and ordered Taft to get on the ground. Taft stated that he did not break the glass patio door and had observed "two white guys" fleeing from the scene. Taft then stood up and "took off running." Officer Larrive pursued Taft and ultimately stopped him with his Taser.

Officer Willson of the Mendota Heights Police Department arrived at Dunnigan's home and photographed the scene. Officer Willson observed three windows with damage to the glass. Officer Willson also noticed muddy shoe prints, broken pieces of rock, and mud on one of the windows. Taft was transported to the Mendota Heights Police department, where he was interviewed. Taft provided law enforcement with multiple false names and dates of birth. Taft explained to law enforcement that he was in Dunnigan's neighborhood to solicit business for a landscaping company.

Taft was charged with attempted first-degree burglary, first-degree criminal damage to property, false information to police, and fleeing a peace officer. At trial, the state requested the court to allow evidence of a prior burglary that Taft had been involved in to prove Taft's motive and intent to commit the present offense. Over Taft's objection, the district court admitted the testimony of Marquell Crenshaw, who identified Taft as an accomplice to a burglary that took place in Eagan the previous year.

The district court noted that Taft had presented evidence on that charge that he made previous statements to law enforcement that there were other individuals involved in the commission of the burglary, and that he was at the scene of the crime for an innocent reason. Because of this, the district court held that the *Spreigl* evidence was admissible for the state to prove intent and motive (modus operandi would have also fit). Crenshaw then testified that on May 1, 2013, he, Taft, and another person committed a burglary at an Eagan residence. The district court gave the jury a limiting instruction, both prior to the introduction of the evidence and in the court's final instructions, that the *Spreigl* testimony was not to be used to prove the character of Taft or that he acted in conformity with such

3

character. The state did not mention any of the *Spreigl* evidence during its closing argument. Taft appeals.

## DECISION

"Evidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show action in conformity therewith." Minn. R. Evid. 404(b). It may be admissible for another purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake. *Id.*; *see also State v. Spreigl*, 272 Minn. 488, 491, 139 N.W.2d 167, 169 (Minn. 1965). District courts must follow a five-prong test to determine the admissibility of *Spreigl* evidence:

> (1) the state must give notice of its intent to admit the evidence; (2) the state must clearly indicate what the evidence will be offered to prove; (3) there must be clear and convincing evidence that the defendant participated in the prior act; (4) the evidence must be relevant and material to the state's case; and (5) the probative value of the evidence must not be outweighed by its potential prejudice to the defendant.

*State v. Asfeld*, 662 N.W.2d 534, 542 (Minn. 2003). Admissibility of *Spreigl* evidence lies within the sound discretion of the district court, and on review, will not be reversed absent a clear abuse of discretion. *State v. Spaeth*, 552 N.W.2d 187, 193 (Minn. 1996). Taft only challenges the fourth and fifth prongs of the above test. Those elements will be addressed in turn.

Here, the district court allowed the evidence of the prior burglary in order to rebut testimony, elicited by Taft, that he was in the area of the incident as an innocent bystander. Taft argues that the evidence of his involvement in the prior burglary was not relevant, nor was it material, to prove motive or intent. Specifically, Taft argues that attempted first-

4

degree burglary does not have an element of motive, and the prior burglary did not provide the jury with any legitimate assistance in determining the element of intent. We are not persuaded.

Evidence of unrelated crimes committed by a defendant is admissible if the evidence shows a motive for the present offense. *State v. Ferguson*, 581 N.W.2d 824, 834 (Minn. 1998). Although motive is not an element of most crimes, the state is usually entitled to prove motive because it explains the reason for an act and can be important to a required state of mind. *State v. Ness*, 707 N.W.2d 676, 687 (Minn. 2006). Motive and intent are distinct concepts. Motive "concerns external facts that create a desire in someone to do something, whereas intent is a state of mind in which an act is done consciously, with purpose." *Id*.

For example, in *State v. Bauer*, evidence that tended to show a strained relationship between the defendant and the victim of a crime was relevant to establish the motive for killing the victim. 598 N.W.2d 352, 364 (Minn. 1999) (noting that the strained relationship also put the acts into context); *see also State v. Mills*, 562 N.W.2d 276, 285 (Minn. 1997). Evidence of prior assaults a defendant committed against his ex-wife was properly admitted to show the defendant's motive for threatening the ex-wife's boyfriend. *State v. Halverson*, 381 N.W.2d 40, 43 (Minn. App. 1986), *review denied* (Minn. Mar. 21, 1986). Evidence that a victim was aware of robberies that had been committed by the defendant was properly admitted to establish the defendant's motive to kill the witness in order to prevent her potential testimony. *State v. Martin*, 293 Minn. 116, 128, 197 N.W.2d 219,

226-27 (Minn. 1972). A common trend among these examples is a clear causal connection between the prior bad act and the later offense.

There is nothing that shows a causal connection between the prior burglary and the present offense. There are no external facts to show how the prior burglary created a desire in Taft to commit the later burglary. The only connection between the two offenses is that they were residential burglaries, but that does nothing to prove Taft's motive to commit the present offense. Thus, motive was an improper basis for admitting the *Spreigl* evidence.

However, the district court also admitted the *Spreigl* evidence to show that Taft had the requisite intent to burglarize Dunnigan's home. The admission of *Spreigl* evidence for the purpose of proving intent "requires an analysis of the kind of intent required and the extent to which it is a disputed issue in the case." *Ness*, 707 N.W.2d at 687. At issue for purposes of this appeal is the charge of attempted first-degree burglary. At trial, the district court gave the jury instructions on the required state of mind for Taft to be found guilty of attempted first-degree burglary. The main issue at trial was whether Taft was the individual who broke the glass window *with the intent to* burglarize the home, or was he simply at the location of the incident to solicit business for a landscaping company as he claims.

In *Spaeth*, the court upheld the admission of evidence of burglaries that the defendant committed approximately ten years prior to the charged offense in order to assist the state in establishing identity and modus operandi. 552 N.W.2d at 195. The prior bad acts "bolstered the state's case on the issue of identity and *helped rebut Spaeth's innocent explanation for his presence near the crime scene*." *Id*. (emphasis added). Although

6

*Spaeth* focused on admission of bad acts for the purpose of proving identity, the same principles the court relied on apply here.

The defense's theory of innocence was that Taft was in the neighborhood and on the patio for the innocent purpose of soliciting business for a landscaping company. The state's aim was to use the *Spreigl* evidence in a very similar way to how it was used in *Spaeth*, to combat the defendant's innocent explanation for his presence at the crime scene. The state needed to prove Taft's state of mind for the attempt portion of the first-degree burglary charge, because law enforcement intervened before a completed burglary occurred. Evidence of the prior burglary provided the jury with a context for his presence at Dunnigan's home, and was used to help prove Taft's intent to commit a burglary. Evidence of Taft's involvement was relevant and material for the issue of intent.

Taft argues that the admission of the *Spreigl* evidence had no legitimate probative value, and was highly prejudicial. When determining whether the probative value of *Spreigl* evidence outweighs its potential for unfair prejudice, courts balance the relevance of the prior bad acts, the risk of the evidence being used as propensity evidence, and the State's need to strengthen weak or inadequate proof in its case. *State v. Scruggs*, 822 N.W.2d 631, 644 (Minn. 2012). Prior bad act evidence can be unfairly prejudicial if used by the jury for an improper purpose, such as proof of a defendant's propensity to commit the charged offense. *Id*. In addition to the factors mentioned, the court in *Spaeth* noted that the district court minimized the prejudicial effect of the *Spreigl* evidence by providing the jury with limiting instructions at the time the evidence was introduced, and again at the end of the trial. *Spaeth*, 522 N.W.2d at 196. All relevant evidence that tends to establish

7

a defendant's guilt is always "prejudicial" to the defendant, but that does not preclude its admission.

The *Spreigl* evidence in this case had probative value in proving the element of intent for the attempted first-degree burglary charge. The state had a need to strengthen an area of its case—explaining Taft's state of mind at the crime scene—after Taft elicited testimony that he was at Dunnigan's home for an innocent purpose. Because the factors in *Scruggs* have been satisfied, the probative value of the *Spreigl* evidence was not outweighed by its prejudicial effect. The district court properly admitted the testimony regarding Taft's involvement in the prior burglary for the limited purpose of proving intent.

**Affirmed.**